UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AARON RICHARD JONES,

                    Petitioner,

vs.                                 Case No.  2:08-cv-625-FtM-29SPC

SECRETARY,  DOC  and  ATTORNEY
GENERAL OF THE STATE OF FLORIDA,

                    Respondents.
_____


## OPINION AND ORDER

### I. Status

Petitioner Aaron Richard Jones (hereinafter "Petitioner" or "Jones") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on August 4, 2008.[1]  The Petition challenges Petitioner's April 16, 2003, judgment of conviction for Robbery With a Firearm and Grand Theft Auto entered in the Twentieth Judicial Circuit Court, Lee County, Florida (case number 01-1004CFA).   Petition at 1.[2] Petitioner's sentence and conviction were *per curiam* affirmed on

_____

[1]The Petition was filed in this Court on August 7, 2008; however, the Court applies the "mailbox rule" and deems a petition "filed on the date it is delivered to prison authorities for mailing."  Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

[2]The page numbers referenced within this Order, other than to the page number referenced in the Exhibits, are to the page of the identified document as it appears on the Court's case management electronic computer filing system.  Exhibits are available in paper format only.

direct appeal.[3] <u>Jones v. State</u>, Case No. 2D03-2065 (2d DCA 2004); Exh. 9.

The Petition raises the following thirteen grounds for relief:

GROUND ONE

THE TRIAL COURT ERRONEOUSLY DENIED THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FOUND DURING AN ILLEGAL DETENTION.

GROUND TWO

THE DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHTS WERE VIOLATED WHERE THE TRIAL COURT ERRONEOUSLY DENIED HIS REQUEST TO INTERVIEW JURORS FOR MISCONDUCT.

GROUND THREE

THE TRIAL COURT ERRONEOUSLY DENIED THE DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL.

GROUND FOUR

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ON DIRECT APPEAL THREE CRITICAL ISSUES WHICH SEVERELY PREJUDICED THE DEFENDANT.

GROUND FIVE

THE POSTCONVICTION COURT ERRED IN DENYING THE DEFENDANT'S CLAIM OF NEWLY DISCOVERED EVIDENCE, BY RULING THAT THE EVIDENCE WOULD NOT PRODUCE AN ACQUITTAL ON RETRIAL.

GROUND SIX

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL DETECTIVES MARK CHIHOOD AND MATTHEW SELLERS TO GIVE TESTIMONY THAT WAS FAVORABLE TO THE DEFENSE.

---

[3]To the extent relevant, the Court will address the other postconviction motions filed by Petitioner at the time the Court discusses each of the grounds asserted herein for relief.

## GROUND SEVEN

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY CROSS-EXAMINE STATE'S WITNESS DETECTIVE BARRY LEWIS.

## GROUND EIGHT

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MAKE THE INFERENCE BASED ON THE STATE'S FAILURE TO CALL A WITNESS.

## GROUND NINE

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND HAVE AN EXPERT EXAMINE CRITICAL EVIDENCE WHICH COULD HAVE BEEN FAVORABLE TO THE DEFENSE.

## GROUND TEN

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESERVE AN ISSUE FOR APPELLATE REVIEW BY OBJECTING TO NOT BEING ABLE TO RE-CROSS-EXAMINE STATE WITNESS GERALD MORE CONCERNING THREATS ISSUED TO HIM BY THE STATE IF HE DID NOT TESTIFY.

## GROUND ELEVEN

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT EVIDENCE THAT STATE WITNESS TIFFANY FLEMING WAS BIASED AGAINST THE DEFENDANT AND HAD AN ULTERIOR MOTIVE FOR TESTIFYING.

## GROUND TWELVE

THE DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHTS WERE VIOLATED WHERE THE COURT DEPARTED FROM ITS ROLE OF IMPARTIALITY DURING TRIAL.

## GROUND THIRTEEN

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO DOCUMENTS ENTERED INTO EVIDENCE AT SENTENCING WHICH VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHT TO CONFRONTATION.

See generally Petition.

Respondent filed a Response to the Petition and addressed each of the Grounds for relief raised in the Petition (Doc. #15,

Response).  Respondent submits that certain of the claims in the Petition should be dismissed as procedurally barred or because they fail to present a federal issue, and other claims should be denied because Petitioner fails to satisfy his burden under 28 U.S.C. § 2254(d) and (e).  Response at 1.  Respondent filed exhibits (Exhs. 1-31) in support of the Response, including the three-volume record on direct appeal (Exh. 29, Vols. I, II and III).  Petitioner filed a reply to the Response (Doc. #20, Reply).  This matter ripe for review.

## II.  Applicable § 2254 Law

Jones filed his timely[4] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Consequently, post-AEDPA law governs this action.  Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).  Under AEDPA, a federal court's standard of review "is greatly circumscribed and is highly deferential to the state courts."  Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007)(internal quotations and citations omitted).  AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to

---

[4]Respondent concedes that the Petition is timely filed within the one-year federal limitations period set forth in 28 U.S.C. Section 2244(d).  Response at 10.  The Court agrees.

ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 787 (2011)(internal quotations and citations omitted)(emphasizing "[f]ederal habeas review of state conviction frustrates both the State's sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."). Consequently, the Court applies the following principles of law in evaluating the claims set forth in the instant Petition.

## A. Only Federal Claims are Cognizable

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the grounds that the petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States. 28 U.S.C. § 2254(a). A claimed violation of state law is insufficient to warrant review or relief by a federal court under § 2254. Pulley v. Harris, 465 U.S. 37, 41 (1984)(stating "[a] federal court may not issue the writ on the basis of a perceived error of state law."); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)(stating "[t]oday, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Waddington v. Sarausad, 129 S. Ct. 823, 832 n.5 (2009)(same); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000)(stating § 2254 not enacted to enforce

state-created rights).  <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983)(finding claim involving pure question of state law does not raise issue of constitutional dimension for federal habeas corpus purposes; state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved).

**B.  Exhaustion and Procedural Default**

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.  28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted.)  This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.  <u>Rhines v. Weber</u>, 544 U.S. 269, 274 (2005).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).  <u>See also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas

relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)); <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'"). Additionally, in articulating a factual basis in support of a claim for relief, a petitioner must have also alleged the factual predicate to the state court. <u>Kelley v. Sec'y for Dep't of Corrs.</u>, 377 F.3d 1317, 1343-44 (11th Cir. 2004)(noting that petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition if they did not first raise them in the state courts).

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual

"prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d at 1190. Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House v. Bell, 547 U.S. 518, 536 (2006); Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

### C.  Deference to State Court Decision

Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt."  Id. (internal quotations and citations omitted).  See also Harrington v. Richter, 131 S. Ct. at 786 (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; See also, Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).

"[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a

different result from the Supreme Court when faced with materially indistinguishable facts." Ward, 591 F.3d at 1155 (internal quotations and citation omitted); Mitchell v. Esparza, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520).

The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. Further, the Supreme Court has recently held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. Id.

**D.  Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. ___, 130 S. Ct. 13, 16 (2009).  Thus, a habeas court's review of a claim under the Strickland standard is "doubly deferential."  Knowles v. Mirzayanze, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009)(citing Yarborough v. Gentry, 540 U.S. 1, 5-6

(2003)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, at 694.  That requires a "substantial," not just "conceivable," likelihood of a different result.  Harrington, 131 S. Ct. at 791.

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices."  Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom., Jones v. Allen, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue.  Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom., Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a

client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

"In considering the reasonableness of an attorney's decision not to raise a particular claim, [a court] must consider 'all the circumstances, applying a heavy measure of deference to counsel's judgments.'" <u>Eagle</u>, 279 F.3d 926, 940 (11th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 691). "Thus, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 689). The reasonableness of counsel's assistance is reviewed in light of both the facts and law that existed at the time of the challenged conduct. <u>Chateloin v. Singletary</u>, 89 F.3d 749, 753 (11th Cir. 1996).

### E. Ineffective Assistance of Appellate Counsel

The <u>Strickland</u> standard also governs claims asserting ineffective assistance of appellate counsel. To determine whether Petitioner was prejudiced by his appellate attorney's failure to raise a particular issue, the Court "must decide whether the

arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle v. Linahan, 279 F.3d 926, 943 (11th Cir. 2001)(citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court.  Schriro v. Landrigan, 550 U.S. 465, 474-475 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 550 U.S. at 475.

**GROUND ONE**

In Ground One, Petitioner contends that the trial court erred by failing to grant his motion to suppress evidence, which Petitioner argues was discovered during his "period of illegal detention."  Petition at 5.  Respondent seeks dismissal of Ground

One pursuant to Stone v. Powell, 428 U.S. 465 (1976).  Response at
13.

The law is well settled that a federal court cannot entertain
a violation of a habeas petitioner's Fourth Amendment rights if the
petitioner had an opportunity for full and fair consideration of
his claim in the state courts.  Stone, 428 U.S. at 494; Bradley v.
Nagle, 212 F.3d 559, 564 (11th Cir. 2000); Mincey v. Head, 206 F.3d
1106, 1125 (11th Cir. 2000).  "[F]ull and fair consideration
requires consideration by the fact-finding court, and at least the
availability of meaningful appellate review by higher state court."
Mincey, 206 F.3d at 1126.  Here, Petitioner's prior exhaustion of
this ground in the Florida state courts triggers the bar of Stone
v. Powell, precluding federal review of his Fourth Amendment claim,
because the State provided Petitioner with processes for full and
adequate consideration of this ground.

A review of the procedural history of this matter evidences
that Jones was provided a "full and fair consideration" of his
claims.  On February 11, 2003, the trial court granted Jones a
hearing on his motion to suppress, Exh. 30, and Jones raised the
suppression issue on direct appeal.  Exh. 6.  Jones does not
demonstrate that the suppression hearing conducted by the trial
court and the review of trial court's conclusions by the appellate
court did not afford him a full and fair opportunity to develop the
factual issues of his case.  Any allegation of state court error in
denying a motion to suppress does not suffice to avoid the Stone

bar.    See Swicegood v. Alabama, 577 F.2d 1332, 1324 (5th Cir.

1978)(holding that the Stone bar applies despite an error by the

state court in deciding the merits of a Fourth Amendment claim.).[5]

Accordingly, pursuant to Stone, Ground One of the Petition is

dismissed.

**GROUND TWO**

In his second ground for relief, Petitioner claims that the

trial court violated his 6th and 14th Amendment rights by denying

the defense's request to interview jurors when evidence of

misconduct was presented.  Petition at 7.  Respondent argues that

this ground is unexhausted and procedurally barred because,

although Petitioner presented this ground for review on direct

appeal, he did not raise the issue in terms of a violation of

federal law.  Response at 16.  Alternatively, Respondent argues

that the Court should deny this ground on the merits.  Id. at 18.

The Court agrees that this claim is unexhausted and

procedurally barred.  On direct appeal, Petitioner raised the

following issue:

> Did the trial court err in failing to grant the defense
> request to interview jurors when evidence of juror
> misconduct was presented.

Exh. 6 at 36.  Nowhere in his brief on direct appeal does

Petitioner claim that any of his federal constitutional rights were

---

[5]Unless later superceded by Eleventh Circuit precedent, a Fifth
Circuit decision issued prior to the close of business on September
30, 1981, binds this court.  Bonner v. City of Prichard, 661 F.2d
1206, 1207 (11th Cir. 1981)(en banc).

violated.  Instead, on direct appeal, Petitioner cites to only Florida statutes and Florida law in support of his claim that the trial court erred in denying his motion to interview jurors.  Id. at 36-40.  Further, Petitioner does not establish cause for or actual prejudice to overcome the procedural bar.  Nor is Petitioner entitled to the fundamental miscarriage of justice exception. Consequently, the Court finds that this ground is unexhausted and procedurally barred.

In the alternative, even if the Court considered this ground, Petitioner has not presented any evidence or made any legal argument demonstrating that the Florida courts' rejection of this claim is contrary to or an unreasonable application of federal law. In pertinent part, the trial court denied the defense's motion as follows:

> 1.  In his sworn Motion, Defendant requests that interviews be conducted of the members of his jury trial. The Motion alleges that after Defendant's trial, an alternate juror approached defense counsel and complimented him on his closing argument.  The alternative juror further stated that she and other jurors had discussed some of the same issues during the course of the trial. When asked to clarify, she explained to defense counsel that, on at least two occasions during the trial, the jury engaged in deliberative discussions.
>
> 2. In further support of his Motion, Defendant has filed the sworn "Affidavit" of another attorney who was with defense counsel at the time he was approached by the alternate juror.  According to the affidavit, the alternate juror complimented defense counsel on his closing argument and stated that she and other jurors had discussed some of the same issues (arguments for and against conviction) during a recess and during a break between closing arguments.

3. Pursuant to Fla. Stat. § 90.607(2)(b), "upon inquiry into the validity of a verdict . . . a juror is not competent to testify as to any matter which essentially inheres in the verdict. . . ." "To this end, any jury inquiry is limited to allegations which involve an overt prejudicial act or external influence, such as a juror receiving prejudicial nonrecord evidence or an actual, express agreement between two or more jurors to disregard their juror oaths and instructions . . . ." <u>Reaves v. State</u>, 826 So. 2d 932, 934 (Fla. 2002) (emphasis added). In <u>Reaves</u>, two jurors informed defense counsel after trial that another juror had attempted to discuss the case prematurely. <u>Id.</u> The <u>Reaves</u> court held that juror interviews were not permissible under these circumstances because the matter was one that essentially inhered in the verdict. <u>Id.</u>

4. The facts alleged in Defendant's Motion and supporting Affidavit are substantially similar to those in <u>Reaves</u>. 826 So. 2d 932. The Motion and supporting Affidavit do not allege that jurors received prejudicial nonrecord evidence or the existence of an actual, express agreement between jurors to disregard their oath and instructions. In short, Defendant's Motion and supporting Affidavit do not contain any allegations involving an overt prejudicial act or external influence that would warrant a jury inquiry. Accordingly, pursuant to § 90.607(2)(b) and <u>Reaves</u>, the court finds that the members of Defendant's jury panel are not competent to testify regarding the alleged misconduct because it is a matter that essentially inheres in the verdict. <u>Id.</u>

Exh. 31.

Rules which prevent attorney interviews or other contact with jurors, or preclude juror testimony where the subject inheres in the verdict itself, have been repeatedly applied in criminal cases and upheld as constitutional. <u>See, e.g.</u>, <u>Tanner v. United States</u>, 483 U.S. 107, 119 (1987) (stating "[s]ubstantial policy considerations support the common law rule against the admission of jury testimony to impeach a verdict" and applying Federal Rule of Evidence 606(b) to exclude testimony of juror misconduct to impeach

jury verdict, including jurors' alleged use of drugs and alcohol); United States v. Griek, 920 F.2d 840, 843 (11th Cir. 1991); Sims v. Singletary, 155 F.3d 1297, 1312-13 (11th Cir. 1998)(applying Florida rule that juror testimony is not relevant unless it concerns matters that do not essentially inhere in the verdict itself). See also LeCroy v. Sec'y, Dept. of Corr., 421 F.3d 1237, 1260 (11th Cir. 2005).

Accordingly, Petitioner has not shown that the State court's decision denying the defense's motion to interview jurors was contrary to or an unreasonable application of clearly established law. Consequently, in the alternative, the Court denies Ground Two as without merit.

### GROUND THREE

In his third ground for relief, Petitioner submits that his right to a fair trial was violated when the trial court erroneously denied the defendant's motions for a judgment of acquittal because the case was based upon circumstantial evidence. Petition at 8. Respondent contends that this ground is unexhausted, and now procedurally barred, because Petitioner did not raise this ground in the State courts in terms of a federal constitutional violation. Response at 19. Respondent notes that on direct appeal Petitioner raised this issue only under State law, which was insufficient to exhaust a federal question concerning the denial of his acquittal

motion.  Id.  Alternatively, Respondent argues that the ground should be denied on the merits.  Id. at 21.

The record reflects that Petitioner, through appointed counsel, argued on direct appeal that the trial court erred by denying his motion for judgment of acquittal because the State had presented only circumstantial evidence that Jones committed robbery with a weapon, grand theft, and grand theft auto.  Exh. 6 at 41. Petitioner's brief relied wholly upon State law, except for a passing reference to In Re Winship, 397 U.S. 358, 364 (1970), Exh. 6 at 44.  The Court does not find that this passing reference to federal law sufficiently alerted the State court of the federal dimension of Petitioner's claim.  Instead, Petitioner pressed his claim arguing that the circumstantial evidence was not inconsistent "with any reasonable hypothesis that someone other than Jones robbed [the] Money Corner."  Exh. 6 at 42.  Petitioner's substantive arguments relied exclusively on Florida law.  Id. at 41-46.  Although raised as a sufficiency of the evidence claim, Petitioner did not allege a claim of fundamental error, but instead argued that there was only circumstantial evidence of guilt.

Thus, the Court finds that Petitioner did not alert the State court that he was raising this claim in its current constitutionalized form.  Petitioner does not demonstrate cause for and actual prejudice, or that a fundamental miscarriage of justice will result to overcome the default.  Thus, the Court dismisses Ground Three as unexhausted and procedurally defaulted.

In the alternative, to the extent that Petitioner's passing reference to In Re Kinship is deemed sufficient to have alerted the State Court of a federal claim, Petitioner is denied relief on the merits. In Jackson v. Virginia, the United States Supreme Court held that, when reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. 307, 318-319 (1979) (emphasis in original). It is within the province of the jury to weigh the credibility of all of the witnesses' testimony. Id. at 318-319. The State, in its response to Petitioner's sufficiency of the evidence argument on direct appeal, offered the following:

> A jury found Appellant guilty of robbery with a firearm and grand theft. (R. at 69). Robbery with a weapon is defined as "the taking of money or other property . . . from the person or custody of another, with the intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear" coupled with the fact that "in the course of committing the robbery the offender carried a weapon." § 812.13, Fla. Stat. (2001). The State introduced evidence to support each element of the offense.

> The State's evidence showed that two men robbed the Money Store. The male who entered the store wore a green mask and the other male who waited outside in the parking lot wore a blue sweatshirt. Police stopped a car with Appellant and his accomplice inside and found money belonging to the Money Store and a blue hooded sweatshirt inside the trunk. (T. at 266). Police found a green mask inside a trash can by the apartment where Appellant went to immediately after committing the crime. (T. at 267). Furthermore, the victim testified that the person who

forced her to open the safe at the Money Store emptied a trash can and used a white trash bag to store the money. (T. at 189). Police found Appellant's fingerprints on a similar bag at the apartment. (T. at 303).

Appellant does not dispute that there was a robbery and the person used a firearm during the commission of the crime, but he does contend that he was not the person who committed the crime. His reasonable hypothesis of innocence was that someone else went inside the Money Store and stole money from the safe. It is well established that the State is not required to conclusively rebut every possible variation of events which can be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's reasonable theory of events. <u>Helm v. State</u>, 651 So. 2d 142, 143 (Fla. 2d DCA 1995). Although Appellant denied any wrongdoing, the State's circumstantial evidence showed that he was the person who committed the crime. Clearly, the jury chose to believe the State's theory rather than Appellant's claim of innocence. The jury was able to weigh the evidence, observe the witnesses and evaluate their credibility. A determination by the trier of fact, when supported by substantial evidence, will not be reversed on appeal. <u>State v. Law</u>, 559 So. 2d 187 (Fla. 1989). Therefore, this court should affirm the trial court's denial of the motion for judgment of acquittal as to the robbery count.

Appellant also claims that the trial court erred when it denied the motion for judgment of acquittal as to the grand theft of a motor vehicle count. The State alleged that Appellant and his accomplice stole Kelly Black's vehicle and drove it to the scene of the robbery. The State also alleged that after the crime, Appellant left the car by the side of a road and walked through an open field to the apartment belonging to Danielle Preston. Appellant denied being the person who stole Kelly Black's 1995 Chrysler LeBaron.

Conviction for grand theft requires proof that a perpetrator knowingly obtained the property of another with the intent to either temporarily or permanently deprive the owner of its use. <u>Gaber v. State</u>, 662 So. 2d 422, 423 (Fla. 3d DCA 1995). Intent is hardly ever subject to direct proof and must usually be established by surrounding circumstances. <u>Brewer v. State</u>, 413 So. 2d 1217, 1219 (Fla. 5th DCA 1982). The degree of grand

theft depends on the value of the property taken. §
12.014 (2), Fla. Stat. (2001).

The victim, Kelly Black, reported her car stolen on March
21, 2001, the same day as the robbery. (T. at 22). About
an hour later, police found Ms. Black's abandoned car.
This same vehicle matched the description of the vehicle
used by the two males who committed the robbery. Police
also used a canine who followed a scent from the
abandoned car to Danielle Preston's apartment. (T. at
37). Later, police positively identified Appellant's
fingerprint on a tool inside Ms. Black's car. (T. at
282-83). While no one saw Appellant inside the vehicle,
Ms. Black did not know Appellant or give him permission
to use her car. (T. at 19, 22).

Since there was direct evidence of Appellant's
unexplained presence in the victim's vehicle as well as
circumstantial evidence that Appellant used the vehicle
during the commission of the robbery, the State's
evidence showed that Appellant committed the crime of
grand theft.

Exh 7 at 13-16.

Based upon the foregoing, as well as a review of the full
record of the facts that were submitted to the jury, a rational
trier of fact could have found the essential elements of the crimes
beyond a reasonable doubt. Consequently, in the alternative,
Petitioner is denied relief on Ground Three.

**GROUND FOUR**

Petitioner claims appellate counsel was ineffective for
failing to raise three critical issues on direct appeal: (1)
failing to raise the issue of the jury not being sworn, which
allowed biased jurors to serve on the jury; (2) failing to raise
that the State's witness, Gerald Moore, was threatened by the

State; and (3) failing to raise the issue of trial court error in refusing to let the defense re-cross Gerald Moore. Petition at 10.

Petitioner filed two State petitions for writ of habeas corpus raising these three same claims alleging ineffective assistance of appellate counsel for relief. Exhs. 12, 17. The appellate court directed the State to respond only to claim 2 - - whether counsel was ineffective for failing to raise the issue that the State's witness, Gerald Moore, was threatened. Exh. 13. The State appellate court denied both of Petitioner's petitions without opinion. Exhs. 16, and 18.

The Court finds that Ground Four is exhausted to the extent raised in his State habeas petitions below. Duncan v. Henry, 513 U.S. 364 at 365. Further, the Court deems the appellate court's rejection of Petitioner's claims to be an adjudication on the merits, which warrant deference by this Court. Ferguson v. Culliver, 527 F. 3d 1146.

Petitioner has a Sixth Amendment right to effective assistance of counsel both at trial and on direct appeal. Evitts v. Lucey, 469 U.S. 387, 396-97 (1985); Smith v. Robbins, 528 U.S. 259, 278 (2000). In reviewing appellate counsel's performance, the Court "is mindful the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. Rather, an effective attorney will weed out weaker arguments, even though they may have merit." Philmore v. McNeil, 575 F.3d 1251, 1265 (11th Cir. 2009)(internal quotations and citations omitted).

**Claim 1**

As his first claim in his State petition, Petitioner alleged that appellate counsel was ineffective because she failed to raise on direct appeal the fact that the jury was not sworn in before *voir dire*. Exh. 12 at 2. Petitioner claims that, as a result, biased jurors served on his panel. Id. Petitioner does not provide any documentation in support of his claim. The record before the Court does not contain the *voir dire* proceedings. However, appellate counsel had access to the *voir dire* proceedings because Petitioner's brief on direct appeal references that "A jury of six people and one alternate were selected on February 12, 2003 (R. 283-368)." Exh. 6 at 2.

Initially the Court finds that Petitioner's claim is facially invalid because he makes no allegation that either he or defense counsel objected to the venire panel prior to the start of trial to preserve this issue for appeal. Further, Petitioner provides no support for his contention that the jury was not sworn in before *voir dire*. See U.S. v. Pinero, 948 F.2d 698, 700 (11th Cir. 1991)(rejecting argument that conviction should be set aside because nothing in the record indicates that jury was not sworn noting "[t]he mere absence of an affirmative statement in the record . . . is not enough to establish that the jury was not in fact sworn."). The fact that the record does not refute a petitioner's allegation does not imply the existence of the factual

allegation. To the contrary, a petitioner has an affirmative obligation to introduce evidence that proves counsel's deficiency. Harvey v. Warden, Union Corr., 629 F.3d 1228, 1244 (11th Cir. 2011)(citing Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)). "[W]here the record is incomplete or unclear about [counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999). Thus, Petitioner does not demonstrate that counsel was deficient.

Even if Petitioner can demonstrate that the jury was not sworn prior to *voir dire*, Petitioner fails to demonstrate that the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Petitioner does not allege, yet alone demonstrate, that any member of the jury venire gave untruthful answers, or that Petitioner would have prevailed with a different jury. Thus, Petitioner fails to demonstrate actual prejudice, and his claim must be denied.

### Claims 2 and 3

Petitioner in his second claim in his State habeas faulted appellate counsel for failing to raise on direct appeal fundamental error by the trial court. Exh. 12 at 5. Petitioner claims that the trial court threatened witness Moore, thereby affecting the jury and resulting in fundamental error. Id. As his third claim,

Petitioner assigned error to appellate counsel for not raising, as reversible error, the trial court's refusal to permit defense counsel to re-cross examine Moore. Id. at 6.

The State, as directed, filed a response only to claim 2 of Petitioner's State habeas. Exh. 13. In his State reply brief, Petitioner argues that he attributes fundamental error to the trial court for refusing to permit defense counsel to make a proffer and permit defense counsel to re-cross examine Gerald Moore, which was Petitioner's third claim in his State petition. Exh. 15. Consequently, the Court will address claims 2 and 3 together.

As to claim 2, a review of the record reveals that the trial court's admonishment to witness Gerald Moore occurred outside of the presence of the jury. Exh. 29, Vol. I at 209-210. Thus, the jury was not present when the trial court advised witness Moore that he could be held in contempt for failing to appear to testify the next morning, pursuant to the subpoena. The jury only became aware of the fact when defense counsel raised the issue on cross-examination as evidenced below:

> Q: Well isn't it a fact, sir, that you were threatened with arrest yesterday in order to get you to come to court?
>
> A: You mean after I left court? Not before I got here.
>
> Q: Yes. Isn't that what happened yesterday?
>
> A: Do you want to recall that I've been threatened being here several times before that?
>
> Q: That's not my question, sir. Isn't that a fact that you were threatened?

A: Yes, several times.

Exh. 29, Vol. II at 270.

Petitioner fails to explain how the trial court committed any error, even if the court did "threaten" the witness with contempt in front of the jury. The power of the court to hold a party who is within its jurisdiction in contempt has long been recognized as within the court's inherent powers. In re Terry, 128 U.S. 289, 302 (1888)(recognizing that it is "without dispute" that the court has inherent power to punish and jail an individual for contempt). Moreover, it was defense counsel, not the trial court, who brought the matter to the attention of the jury.

As to claim 3, that the trial court erred in not permitting defense counsel to re-cross witness Moore, a review of the record reveals that the trial court did not permit defense counsel from re-crossing Gerald Moore after the State conducted the following redirect examination of Moore.

Q: Mr. Moore, you don't want to be here today, do you?

A: No.

Q: Mr. Brener asked you about being threatened with arrest yesterday; is that correct?

A: Yes.

Q: You came down here and you left, didn't you?

A: Yes.

Q: Why did you leave?

DEFENSE COUNSEL: Objections, relevance.

-28-

COURT: The objection's overruled. You went into it.

A: Actually, I ain't want to have nothing to do with this case from the beginning.

Q: Why is that?

DEFENSE COUNSEL: Objection as to relevance.

COURT: Overruled.

A: Well, one of the reasons why I didn't want to have nothing to do with it --

DEFENSE COUNSEL: Your Honor, may we approach?

A: -- is I knew it was going to be a long process. That's one thing. Two, I done had people come by my house, call the house, call and threaten Wyvett.

DEFENSE COUNSEL: Your Honor, I object. I'd ask --

COURT: Overruled.

A: That's the reason why I didn't want to testify.

Q: Basically, were you concerned for your safety?

A: That and, also, the treatment of Wyvett after this. You know, the same day this happened they wanted her to work and they treated her like she was involved in it. She was later let go from her job. When she had a request to go out of town with her family for a family reunion, she was denied that.

Q: There are many reasons you don't want to be here?

A: Oh, yeah.

Q: One of those reasons is you were afraid for your safety, right?

A: For my family's safety.

Q: Thank you, Mr. Moore. I don't have any further questions.

DEFENSE COUNSEL: Your Honor, briefly.

COURT: Thank you. You may step down, sir.

DEFENSE COUNSEL: Your Honor, may I proffer what I would ask the witness?

COURT: Call your next witness, please.

Id. at 272-274.

Petitioner, however, fails to demonstrate how the trial court erred in preventing defense counsel from further examining Gerald Moore. Cross-examination is clearly a matter of right. Alford v. United States, 282 U.S. 687, 691 (1931). However, the extent of cross-examination is within the sound discretion of the trial court and will not constitute reversible error unless it is so severe that it denies a defendant his right to confront witnesses against him. United States v. Maxwell, 579 F.3d 1282, 1295 (11th Cir. 2009). Thus, under the confrontation clause, a defendant "is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." Kentucky v. Stincer, 482 U.S. 730, 739 (1987). In this case, defense counsel had an opportunity to extensively cross-examine Moore. Exh. 29, Vol. II at 268-272.

Because Petitioner fails to identify on what basis appellate counsel could have argued that the trial court erred in cautioning Moore that he would be held in contempt, or in limiting defense counsel from re-crossing Moore, he has failed to demonstrate how

appellate counsel was deficient.  Thus, claims 2 and 3 must be denied.

Based upon the foregoing, the Court finds that the State postconviction court's decisions denying Petitioner's State habeas petitions were not contrary to clearly established federal law, and were not an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Consequently, Ground Four is denied in its entirety as without merit.

**GROUND FIVE**

In Ground Five, Petitioner claims the postconviction court erred in denying Petitioner's claim that his newly discovered evidence would have resulted in an acquittal.  Petition at 12. Respondent argues that this issue presents only an issue of State law for which habeas relief does not lie.  Response at 36.  In the alternative, Respondent submits that this claim should be denied as without merit as Petitioner fails to sustain his burden under § 2254.  Id. at 37.

Petitioner presented this claim of newly discovered evidence in his Rule 3.850 motion as claim one.  Exh. 19 at 12.  Petitioner attached as an exhibit to his motion a document entitled "Sworn Affidavit" from an inmate he met at Charlotte Correctional Institution named Benjamin Whitfield.  Id.  Whitfield stated he

could testify that Petitioner was not the assailant who committed the armed robbery.  Id.  Petitioner was provided counsel and afforded an evidentiary hearing in connection with his newly discovered evidence claim.  Exh. 21 at 2, ¶3.

Whitfield testified at the evidentiary hearing held on January 8, 2007.  Exh. 22 at 60-77.  On May 7, 2007, the postconviction court denied Petitioner relief on his claim, finding in pertinent part:

> In ground one, Defendant alleged the existence of newly discovered evidence.  Specifically, he claimed that a witness, Mr. Benjamin Whitfield, could testify that Defendant was not the assailant who committed the armed robbery.  Defendant alleged that the evidence was not known at the time of his trial and could not be obtained through due diligence because neither he nor his defense counsel knew "the full name and exact location" of Mr. Whitfield.  The Court notes that Defendant attached Mr. Whitfield's written statement to his Motion.  At the evidentiary hearing, Defendant testified that he met Whitfield for the first time while incarcerated and he was not with Whitfield at the time of the crime.
>
> Whitfield testified at the evidentiary hearing that he met Defendant while in prison.  After hearing Defendant discuss his case, Whitfield told him that he was a witness.  Whitfield explained that he had driven from Fort Lauderdale to Fort Myers on the day of the crime to pick up his friend Cedric Green for a trip the two were planning to Georgia.  It appears that Whitfield was to pick Green up at Danielle Preston's apartment.  While waiting in his vehicle in the parking lot of the apartment complex, he saw Defendant approach the apartment.  Approximately 10 to 15 minutes later Green and another man arrived and went inside the apartment. When Green came out and got into Whitfield's car, he told Whitfield he had to get rid of something.  Notably, Whitfield stated that even though he did not know Defendant at the time he observed him at the apartment, he was sure it was Defendant he saw that day after hearing Defendant discuss the case.

In order to qualify as newly discovered evidence under rule 3.850, the asserted facts must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence. <u>Jones v. State</u>, 591 So. 2d 911 (Fla. 1991). If the evidence qualifies as newly discovered, the trial court must then determine whether the evidence is of such a nature that it would probably produce an acquittal on retrial. <u>Id.</u> If so, then postconviction relief is warranted. <u>Id.</u> The Court finds that the evidence presented at the evidentiary hearing establishes that the newly discovered facts were not known by the trial court, by Defendant or by defense counsel at the time of trial. Nor could Defendant or defense counsel have discovered them by the use of due diligence. Therefore, in accordance with <u>Jones</u>, 591 So. 2d 911, the asserted facts qualify as newly discovered evidence under rule 3.850. However, the Court finds that the evidence is of such a nature that it would probably not produce an acquittal on retrial. Assuming arguendo that Whitfield's testimony is true, it still does not exonerate Defendant in any way. Accordingly, in all likelihood it would not produce an acquittal on retrial. Therefore, ground one is denied.

Exh. 23 at 1-3.

The Court finds that Ground Five does not present a federal issue for which habeas relief lies. Significantly, Petitioner has not framed Ground Five in terms of a federal constitutional violation. Instead, Petitioner disagrees with the State postconviction court's conclusion that the newly discovered evidence would probably not produce an acquittal. This conclusion, under Florida law, is reached after the postconviction court "considers all newly discovered evidence which would be admissible" at trial and then evaluates the "weight of both the newly discovered evidence and the evidence which was introduced at the trial." <u>Jones v. State</u>, 709 So. 2d 512, 521 (Fla. 1998) (citations

omitted).    Federal habeas relief is not warranted for claims premised on newly discovered evidence because they do not present cognizable federal constitutional claims.  <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993)("[t]he existence of merely newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus' . . . [because] federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact.");  <u>Swindle v. Davis</u>, 846 F.2d 706, 707 (11th Cir. 1988)(affirming magistrate and district courts' findings that "[n]ewly discovered evidence which goes to the guilt or innocence of the petitioner is not sufficient to require habeas relief.")(citations omitted);  <u>Smith v. Wainwright</u>, 741 F.2d 1248, (11th Cir. 1984)("Newly discovered evidence in the form of a confession by another does not render the conviction void and subject to collateral attack by habeas corpus because it goes to the merits of the conviction, not its legality.")(citations omitted).

Here, Petitioner argues that the testimony of inmate Whitfield calls into the question his guilt.  The postconviction court, applying Florida law, determined that this newly discovered evidence was insufficient to produce an acquittal.  Federal habeas court do not sit to make independent determinations of a petitioner's guilt or innocence based on evidence discovered since trial.  <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1065 (11th Cir. 2002). Petitioner does not allege an independent constitutional violation

relating to his newly discovered evidence claim. Consequently, the
Court dismisses Ground Five.

**GROUNDS SIX, SEVEN, EIGHT, NINE, ELEVEN, TWELVE, and THIRTEEN**

As set forth below, Petitioner alleges various claims of error
by trial counsel and a claim of trial court error. See generally
Petition at 12. Respondent submits that each of these grounds is
unexhausted, and is now procedurally barred. Response at 39. In
particular, Petitioner was granted an evidentiary hearing for five
of the nine claims raised in his Rule 3.850 motion. Exh. 21.
Respondent acknowledges that, while Petitioner raised each of these
grounds in his Rule 3.850 motion, Petitioner failed to raise any of
these grounds in the appeal of the denial of his Rule 3.850 motion
for postconviction relief, after his evidentiary hearing. Id.

Upon review of the record, the Court finds that following:

## Ground Six

This ground alleges that counsel was ineffective for failing
to call detectives Chi[tw]ood and Sellers. Ground Six was raised
as claim two in Petitioner's Rule 3.850 motion. Exh. 19 at 12.
The postconviction court summarily denied this claim as follows:

> Defendant alleges in ground two that his trial counsel
> was ineffective for failing to call two witnesses at
> trial. Defendant states that he asked trial counsel to
> call Fort Myers Police Detectives Mark Chitwood and
> Matthew Sellers to testify at trial. Defendant claims
> that the detectives would have testified that the
> "testimony anticipated by Tiffany Fleming on March 21,
> 2001 significantly changed" from the time they
> interviewed her to the time of her final statement given
> to Detective Barry Lewis. The record reflects that Ms.

Fleming admitted on cross examination that she made
inconsistent statements to law enforcement officials
during the investigation of this case. In fact, it
appears from the trial transcript that Defendant's trial
counsel questioned Ms. Fleming extensively regarding her
prior inconsistent statements. See attached copy of trial
transcript from February 12, 2003, pages 75-130. Under
these circumstances, the Court finds that any testimony
by Detectives Chitwood and Sellers regarding Ms.
Fleming's inconsistent statements would have been
cumulative. Counsel cannot be deemed ineffective for
failing to proffer testimony that would have been
entirely cumulative. <u>Card v. State</u>, 497 So. 2d 1169
(Fla. 1986). Accordingly, ground two is hereby denied.

Exh. 21 at 2-3, ¶2. Petitioner did not include this claim in his

appellate brief from the denial of his Rule 3.850 motion. <u>See</u>

<u>generally</u> Exh. 24.

**Ground Seven**

This ground alleges that counsel was ineffective for failing

to adequately cross-examine the State's witness, detective Barry

Lewis. Ground Seven was raised as claim three in Petitioner's Rule

3.850 motion. Exh. 19 at 13. The postconviction court summarily

denied this claim as follows:

In ground three, Defendant alleges that trial counsel was
ineffective for failing to cross-examine Detective Barry
Lewis about his off-record conversations with prosecution
witness Tiffany Fleming during her police interview. He
argues that "the information the police gave Tiffany
Fleming between and during interviews was clearly
relevant" to the fact that her statements were
inconsistent. Defendant appears to imply that Detective
Lewis provided Ms. Fleming with details of the crime
during their off-record discussions thereby causing her
to change her subsequent on-record statement in order to
include the details.

The record reflects that trial counsel did cross-examine
Detective Lewis about his off-record conversation with

Ms. Fleming. However, Detective Lewis testified that he did not have an "independent recollection" of the conversation. See attached copy of trial transcript from February 13, 2003, page 131. Accordingly, because the record conclusively refutes Defendant's claim that trial counsel failed to question Detective Lewis about his off-record conversation with Ms. Fleming, ground three is hereby denied.

Exh. 21 at 3, ¶¶5-6. Petitioner did not include this claim in his appellate brief from the denial of his Rule 3.850 motion. See generally Exh. 24.

**Ground Eight**

Petitioner alleges that counsel was ineffective for failing to make an inference based on the State's failure to call a witness. Ground Eight was raised as claim four in Petitioner's Rule 3.850 motion. Exh. 19 at 14. The postconviction court summarily denied this claim as follows:

Pursuant to ground four, Defendant claims that trial counsel was ineffective for not making an inference to the jury based on the State's failure to call Detectives Chitwood and Sellers as witnesses at trial. Two requirements must be met before a party can draw an inference to the jury based on the absence of a witness. First, it must be shown that the absent witness was peculiarly within the other party's power to produce. U.S. v. Mahone, 537 F.2d 922 (7th Cir. 1976). This requirement is met when a witness has a relationship with the opposing party that would in a pragmatic sense make his testimony unavailable to the opposing party. Id. Second, it must be shown that the testimony of the absent witness would have elucidated issues in the case; no such inference is permissible where unpresented evidence would be merely cumulative. Id.

The Mahone Court held that a police officer who investigated the crime for which the defendant is accused is not in fact available to the defendant because of his special relationship with the prosecution. Id. In

accordance with <u>Mahone</u>, it appears that Detectives Chitwood and Sellers were peculiarly within the State's power to produce because of their involvement with the investigation of the case and their relationship with the State.

In support of the second <u>Mahone</u> requirement, Defendant alleges that Chitwood's and Sellers' depositions "revealed new information about the police encounter with Tiffany Fleming," but he does not specify what the "new information" was or how it would have elucidated the issues in his case. Instead, he merely argues that trial counsel "never presented the trial court with the argument as to how Officers Chitwood's and Sellers' testimony would have somehow elucidated or clarified Tiffany Fleming's encounter with the police." Without stating what "new information" Chitwood and Sellers provided, Defendant's claim of ineffective assistance is facially insufficient. In other words, a facially sufficient claim of deficient performance by trial counsel cannot be established without factual allegations showing that the "new information" was relevant to the issues in Defendant's case. Therefore, the Court finds that ground four is facially insufficient and it is dismissed.

Exh. 21 at 3-4, ¶¶7-9. Petitioner did not include this claim in his appellate brief from the denial of his Rule 3.850 motion, after his evidentiary hearing. <u>See</u> <u>generally</u> Exh. 24.

**<u>Ground Nine</u>**

Petitioner alleges that counsel was ineffective for failing to investigate and have an expert examine critical evidence. Ground Nine was raised as claim five in Petitioner's Rule 3.850 motion. Exh. 19 at 16. The postconviction court granted Petitioner an evidentiary hearing on this claim. Exh. 21 at 4-5, ¶10. The postconviction court denied Petitioner relief on this claim, after his evidentiary hearing as follows:

Defendant alleged in ground five that trial counsel was ineffective for failing to investigate his case and obtain an expert witness. Defendant claimed that he advised his attorney that the shoes found in Danielle Preston's apartment had a "different shoe impression design" from the shoe imprint found in the stolen vehicle. He argued that the failure to investigate prejudiced the defense by inferring "uncontested guilt." According to <u>Strickland v. Washington</u>, a claim of ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. 466 U.S. 668 (1984). With "regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669.

Defendant's trial counsel testified at the evidentiary hearing that Defendant advised him that the shoes found in Preston's apartment were not his, but counsel remained concerned that the shoes might still be "attributable" to Defendant. Ultimately, counsel decided that the best strategy would be to not obtain an expert because the State had not obtained an expert and, therefore, would not be able to produce any scientific evidence linking the shoes to Defendant. If the State produced other evidence to link Defendant to the shoes, the defense could still argue that, because Defendant had once lived in the apartment, it was not surprising to find a pair of his shoes inside of it and it did not prove that he had worn the shoes or committed the robbery. Trial counsel also stated that this strategy would avoid the possibility that a defense expert might find scientific evidence, such as DNA, establishing that the shoes belonged to Defendant. Finally, trial counsel testified on cross-examination that, even if an expert witness testified that the shoe found in Preston's apartment did not match the shoe print from the stolen vehicle, such evidence would not necessarily have exonerated Defendant because the shoe print could have belonged to any number of people, including the co-defendant. The Court finds that trial counsel's decision constituted a valid trial strategy and, therefore, his failure to obtain an expert witness did not constitute ineffective assistance of counsel within the meaning of <u>Strickland</u>. Accordingly, ground five is denied.

Exh. 23 at 3-4, ¶¶6-7.  Petitioner did not include this claim in his appellate brief from the denial of his Rule 3.850 motion, after his evidentiary hearing.  See generally Exh. 24.

**Ground Eleven**

Petitioner alleges that counsel was ineffective for failing to present evidence that the State's witness, Tiffany Fleming, was biased against Petitioner and had an ulterior motive for testifying.  Ground Eleven was raised as claim seven in Petitioner's Rule 3.850 motion. Exh. 19 at 18.  The postconviction court granted Petitioner an evidentiary hearing on this claim. Exh. 21 at 5, ¶12.  The postconviction court denied Petitioner relief on this claim, after his evidentiary hearing as follows:

> Defendant alleged in ground seven that trial counsel was ineffective for failing to present evidence that prosecution witness Tiffany Fleming was biased against him.  He claimed the reason Fleming testified against him at trial was because he was once involved in a physical altercation with her boyfriend. Defendant alleged that "trial counsel began to impeach [Fleming] but he abandoned this line of questioning and it was not complete." According to trial counsel's evidentiary hearing testimony, he remembered speaking with Defendant about Fleming and he recalled there was a reason why Fleming disliked Defendant.  During cross-examination at trial, counsel asked Fleming several times whether she disliked Defendant, but she denied it.  Trial counsel then brought out the fact that in her statement to police, Fleming admitted she did not like Defendant. Trial counsel further testified that he did not question Fleming about the specific reason why she disliked Defendant.  When asked whether it was because Fleming claimed Defendant had previously robbed her boyfriend, trial counsel responded that he could not recall the specifics but, for trial strategy reasons, he would not have wanted a prior robbery to be disclosed to the jury, especially considering he had already impeached Fleming's

credibility by showing that she had made inconsistent statements regarding whether she disliked Defendant. The Court finds that trial counsel's decision constituted a valid trial strategy. Therefore, his failure to further question Fleming did not constitute ineffective assistance of counsel within the meaning of <u>Strickland</u> and ground seven is denied.

Exh. 23 at 5-6, ¶9. Petitioner did not include this claim in his appellate brief from the denial of his Rule 3.850 motion, after his evidentiary hearing. <u>See</u> <u>generally</u> Exh. 24.

**Ground Twelve**

Petitioner alleges that his 6th Amendment rights were violated where the Court departed from its role of impartiality during trial. Ground Twelve was raised as claim eight in Petitioner's Rule 3.850 motion. Exh. 19 at 19. The postconviction court summarily denied this claim as follows:

Pursuant to ground eight, Defendant alleges that the trial court erred by "constantly asserting objections when the state attorney had not thought it necessary" during the cross-examination of state's witness Tiffany Fleming. However, issues that either were or could have been litigated upon direct appeal are not cognizable through collateral attack on a rule 3.850 motion for postconviction relief. <u>See</u> <u>Johnson v. State</u>, 593 So. 2d 206 (Fla. 1992). Accordingly, because it could have been raised on direct appeal, the Court finds that ground eight is denied as procedurally barred.

Exh. 21 at 5-6, ¶13. Petitioner did not include this claim in his appellate brief from the denial of his Rule 3.850 motion, after his evidentiary hearing and did not raise this issue on direct appeal. <u>See</u> <u>generally</u> Exhs. 24 and 6.

**<u>Ground Thirteen</u>**

Petitioner alleges that counsel was ineffective during sentencing for failing to object to documents entered into evidence; thereby, violating his right to confrontation. Ground Thirteen was raised as claim nine in Petitioner's Rule 3.850 motion. Exh. 19 at 20. The postconviction court granted Petitioner an evidentiary hearing on this claim. Exh. 21 at 6, ¶14. The postconviction court denied Petitioner relief on this claim, after his evidentiary hearing as follows:

> In ground nine, Defendant alleged that trial counsel was ineffective at sentencing for failing to object when two documents were introduced into evidence in violation of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). Defendant claimed that a document under seal from the Department of Corrections (detailing his latest prison release date) and a document under seal from the Office of Executive Clemency (verifying that Defendant's rights had not been restored and that there was no pending application for clemency) were used to establish his status and enhance his sentence as a Parole Releasee Reoffender in violation of the confrontation clause. According to trial counsel's evidentiary hearing testimony, he did not see an issue with the introduction of the documents because Defendant's case occurred prior to the <u>Crawford</u> decision. Furthermore, pursuant to <u>Yisrael v. State</u>, 938 So. 2d 546 (Fla. 4th DCA 2006), a statement under seal by a named government official constituting a written report of a government agency is entitled to be recognized as a public record within the meaning of Fla. Stat. §90.803(8), the public records and reports exception to the hearsay rule. The record reflects that both documents at issue in ground nine were documents under seal and constituted written reports by named officials regarding the activities of the respective government agency each was employed by. See attached copy of sentencing hearing transcript, pages 1-13. Accordingly, because the records were not testimonial under <u>Crawford</u>, ground nine is denied.

Exh. 23 at 6-7, ¶10.  Petitioner did not include this claim in his appellate brief from the denial of his Rule 3.850 motion, after his evidentiary hearing.  See generally Exh. 24.

The Court finds Grounds Six, Seven, Eight, Nine, Eleven, Twelve, and Thirteen unexhausted and now procedurally barred.  In Florida, exhaustion of a Rule 3.850 claim includes an appeal from its denial.  Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979)(finding that exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of its denial)).  In Florida, if a Rule 3.850 is denied after an evidentiary hearing, the State's procedural rule provides a briefing schedule.  See Fla. R. App. P. 9.141(b)(3)(C).  An issue that is not briefed is deemed waived.  Duest v. Duest, 555 So. 2d 849 (Fla. 1990).  Here, because Petitioner was afforded an evidentiary hearing in connection with his claims, Petitioner was required to file a brief upon appealing the final order denying his Rule 3.850 motion.  Sweet v. State, 810 So. 2d 854, 870 (Fla. 2002)(holding claims raised on appeal from order denying post-conviction relief are procedurally barred if petitioner receives an evidentiary hearing and does not fully brief each issue in his appeal brief).  See also Shere v. State, 742 So.2d 215, 224 n.6 (Fla. 1999); Cortes v. Gladish, 216 F. App'x 897, 899-900 n. 2 (11th Cir. 2007); Galin v. Sec'y, Fla. Dep't of Corr., Case No. 8:08-cv-254-T-23-TBM, 2011 WL 899563 *5 (M.D. Fla. 2011); Bowser v. McNeil, Case No. 5:08-cv-227-RS-EMT, 2011 WL

1158775 *11 (N.D. Fla. 2011); <u>Williams v. McDonough</u>, Case No. 8:02-cv-965T-30-MAP, 2007 WL 2330794 *1-2 (M.D. Fla. 2007).

In reply, Petitioner argues that because Grounds Six, Seven, Eight and Twelve were summarily denied, he was not required to submit a brief as to these issues. Reply at 8. Petitioner concedes that he did not raise Ground Nine, Eleven and Thirteen on appeal, but argues that these "claims allege substantial deficiencies of Trial counsel which deprived Petitioner of his fundamental rights to due process and a fair and impartial trial." <u>Id.</u> at 9.

The Court finds that Petitioner has not shown either cause or actual prejudice to excuse his default. <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003). Furthermore, Petitioner does not show that he is entitled to the fundamental miscarriage exception. Petitioner only identified two specific claims in his appellate brief filed in connection with the denial of his Rule 3.850 motion. Exh. 24. Specifically, Petitioner only raises Grounds Five and Ten in his appellate brief. <u>Id.</u> Petitioner does not make any reference to any of his other Rule 3.850 claims. Nor does Petitioner make any reference to the postconviction court's April 24, 2006 order, denying in part, and dismissing in part, Petitioner's Rule 3.850 motion.

In contrast, the State, in its answer brief, expressly raised Petitioner's waiver of all of his remaining Rule 3.850 claims that he failed to raise in his initial brief. Exh. 25 at 43-44. The

-44-

State explicitly stated that because Petitioner was afforded an evidentiary hearing on his Rule 3.850 motion, Petitioner was required to identify and file a brief on any grounds he wished to challenge, otherwise "he has waived and abandoned his additional rule 3.850 grounds." Id. at 44. In his reply to the State, Petitioner again addresses only the two issues initially identified in his initial brief. See generally Exh. 26. Nowhere does Petitioner take issue with the State's position that he has abandoned his remaining Rule 3.850 issues.

Consequently, the Court finds that Petitioner did not "fairly present" Grounds Six, Seven, Eight, Nine, Eleven, Twelve, and Thirteen to the State appellate court. See Baldwin v. Reese, 541 U.S. 27, 27-28 (2004) (finding that a petitioner does not "fairly present" a federal claim to a state court if the court if the state court is required to read beyond the brief). Thus, the Court finds that these claims were not exhausted in state court and are now procedurally barred, Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008), and dismisses Grounds Six, Seven, Eight, Nine, Eleven, Twelve, and Thirteen of the Petition.

**GROUND TEN**

In Ground Ten, Petitioner faults trial counsel for failing to object to not being able to re-cross examine the State's witness, Gerald Moore, concerning threats issued to him by the State. Petition at 12 Petitioner argues that counsel's failure to object

resulted in a waiver of this issue for appellate review. <u>Id.</u>
Respondent submits that this claim should be denied as without
merit as the State court properly denied this claim. Response at
38.

Petitioner presented this claim in his Rule 3.850 motion as
claim six. Exh. 19 at 16. Petitioner was provided counsel and
afforded an evidentiary hearing in connection with this claim.
Exh. 21 at 5, ¶11. Following the evidentiary hearing, the
postconviction court entered an order denying Petitioner relief on
the following grounds:

> Defendant claimed that Moore's testimony on
> redirect-examination "planted the seed in the jury's
> mind" that Defendant was responsible for making threats
> against Moore and the victim, Moore's girlfriend. Trial
> counsel testified at the evidentiary hearing that,
> although Moore gave an initial statement to the police,
> he did not willingly cooperate thereafter. In fact, the
> day before the trial started or the day before he was
> scheduled to testify, the State brought Moore before the
> trial court and he was admonished that he would be
> arrested if he refused to testify. During the
> cross-examination of Moore at trial, trial counsel
> brought out that Moore's trial testimony regarding the
> description of the perpetrators differed substantially
> from the initial statement he gave to the police. Trial
> counsel tried to impeach Moore by showing that the reason
> why Moore's description of the perpetrators had changed
> was because the trial court had threatened him with
> arrest the day before. On redirect, the State asked
> Moore whether his reluctance to testify was due to
> threatening phone calls he had received. Trial counsel
> testified that he objected, but the trial court ruled
> that counsel "opened the door" to the testimony by
> bringing out the fact that Moore was threatened with
> arrest the day before. The Court notes that the trial
> transcript reflects that trial counsel did, in fact,
> object to the State's asking Moore on redirect
> examination whether he had been threatened to not
> testify. See attached copy of trial transcript, pages

> 1-21. The Court finds that trial counsel's performance
> was not deficient within the meaning of <u>Strickland</u> and
> the record conclusively refutes Defendant's factual
> allegations. Therefore, ground six is denied.

Exh. 23 at 4-5, ¶8. The appellate court *per curiam* affirmed the trial court's denial of this claim. Exh. 27. Thus, the State court's decision on this claim warrants deference under AEDPA.

The postconviction court properly identified and applied <u>Strickland</u> as the governing federal precedent for ineffective assistance fo counsel claims. Thus, the State postconviction court's decision was not contrary to clearly established federal law and was not an unreasonable application of clearly established federal law.

Further, upon a thorough review of record, the State postconviction court's findings were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As noted earlier, the record reflects that defense counsel elicited testimony from witness Moore about being threatened. Exh. 29, Vol. II at 270. Thus, the postconviction court properly found that defense counsel "opened the door" to questioning by the State on the threat issue. Further, the record revealed that defense counsel did, in fact, object during the State's redirect of witness Moore preserving the issue for appeal. Indeed, defense counsel lodged three objections to the State's questioning of Moore, requested a sidebar from the Court, and made a proffer in an attempt to explore further

testimony on re-cross examination. Id. at 272-274. Consequently, the record conclusively refutes Petitioner's claim that defense counsel failed to object to Moore's testimony concerning being threatened. Thus, the Court denies Ground Ten as without merit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. #1) is **DISMISSED** as to Grounds One, Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen and **DENIED** as to Grounds Two, Three, Four and Ten for the reasons set forth herein.

2. The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and, close this file.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 129 S. Ct. 1481, 1485 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v.

_Dretke_, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." _Miller-El v. Cockrell_, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal _in forma pauperis_.

**DONE AND ORDERED** in Fort Myers, Florida, on this __23rd__ day of September, 2011.


                    JOHN E. STEELE
                    United States District Judge

SA: hmk
Copies: All Parties of Record